Our sixth case for today is United States v. Alejandra Zuniga-Galeana. So, Mr. Henderson. Thank you, Your Honor, and may it please the court. My name is Peter Henderson. I'm here on behalf of Alejandra Zuniga-Galeana. Let's deal first with some of the procedural troubles with this case. The government has suggested that any argument here is waived because in the plea agreement, Mr. Zuniga agreed that the 16-level enhancement applied to him. And that's what I thought at first. And then I read this court's decision in Jaime's Jaime's, which is identical to this case. In that case, the defendant in his plea agreement agreed that the 16-level enhancement applied to him. Counsel made no objection at sentencing to the PSR. And on appeal, counsel conceded that it was an aggravated felony, but argued that that's only an 8-level increase rather than a 16-level increase. So, based on the precedent in this court, that's not waiver. That's not an intentional relinquishment of a known right. We are here on a plain error standard, however, and that poses some difficulties. The first two steps of the plain error analysis, whether there was an error and whether it was plain, I think speak to two of the important functions of this court. One is to announce the law for future cases, and that's whether there was an error. And then whether the error is plain has to do a lot with the error correction function of this court. In this case, is Mr. Zuniga entitled to relief? But the thing about plain error that I try to keep in mind is we're talking about something by definition that neither counsel says anything about, and the district judge didn't notice on his or her own. And so it's something one needs to be careful with, because to say to the district judges that you're supposed to sit there and jump in, every time there might be something, is not correct. We live with an adversarial system, and I think that's the plain part of it. It's just got to be very obvious somehow, and I'm not sure that this case qualifies for that. There's a lot of disagreement, as a matter of fact, about how to deal with it. And given the many different views and the many different approaches, I don't see how one can say it satisfies plain error. Right, and there are pragmatic reasons why the court might apply plain error to say— and of course, any case under plain error, the court has discretion as to what it wants to do with the case, even if there is a plain error. The special concern that I have is in these types of criminal cases, where we have Spanish-speaking defendants, they're lay defendants, they are subjected to loss of liberty, they have counsel that's appointed for them, and we have two levels of review. I'm very concerned that if—I think the court should endeavor to correct errors if it believes that an error has been made. But that's not the plain error standard. I mean, maybe you're arguing for a different standard, somehow, if, let's say, the defendant is under some type of disadvantage or another. Language could be one, mental capacity could be another. I mean, I don't know. But that really isn't the standard. The standard for plain error is set forth in Olano in later cases, and it's a high standard. And here, minors are 18, 17, 16, maybe even 14 for all of this. I understand that you're portraying these facts as relatively sympathetic if he has a long-term relationship with this young woman. The government portrays the very same facts as not sympathetic since he has a long-term sexual relationship with somebody who's so young, and they have four children together, and so on. But luckily, we don't have to pass judgment on that. We just have to say, you know, is it plain error to accept the definition of minor that we did in Martinez-Carrillo? Well, and we don't actually object to Martinez-Carrillo. We think that case was correctly decided. That was an aggravated felony case. That was not a crime of violence case. So what happened was that then in Ramirez in 2011, the court looked to Martinez-Carrillo, and I don't want to accuse the court of misreading that opinion, but I think they thought that since it was under Section 2L1.2, that it must be referring to the same thing, when in fact now 2L1.2 punishes crimes of violence with 16-level enhancements. And aggravated felonies like that in Martinez-Carrillo are 8-level enhancements. What I would ask of the court is to undergo both steps of the first two steps of the plain error analysis and first determine whether there was an error. I understand the problems with calling this error plain because this is a morass in the law. Well, that's right. And so even if we gave you the first point, how can we get to the second point? Well, and again, I think that there is some discretion in plain error review. I think certainly a rigid legal view of plain error would say, no, this doesn't qualify. But I think that the court should recognize that in these types of criminal cases with appointed counsel, with lay defendants who don't even speak the language, that there is an error correction role that this court plays in ensuring justice and ensuring that people aren't sitting in prison for years longer than they should be. But here's another way to look at it. I hope I'm not thinking of the wrong case. But the other way to look at it is we do have to be, if you will, rigid when we apply the guidelines. And my recollection is at the trial level, counsel accepts the guideline calculation for what it is, but says under 3553, this is a case that's a good candidate for not accepting the advice that the guidelines give, giving a sentence that might look a little bit more like the one with an 8 level instead of a 16 level, and makes that argument, which seems to me is entirely appropriate for counsel to do. As it happens, the district judge didn't buy it, but those are the risks, right? I mean, there's a lot of discretion with 3553A. But rather than try to say there's plain error in the application of the guidelines, they did what they should have done. They put it under 3553A. Now, if they'd objected and presented all of this, if we actually had this issue properly presented, maybe we should delve into it and see what the result ought to be. Well, and again, I think the court does have an obligation, as you said in the first case this morning, to tell us what the law is. And I think that the law is unclear right now, so I think it would be of assistance to undergo that first step and say, is this an error in the first place? But I think you're right about the 3553A factors, but what the law is right now is the guidelines are tremendously Oh, yeah. And Pew underscores that. And it's no mistake that this was a 41-month sentence. That's not based on any sentence you'd come up with if not for the guidelines. Right. So I'll reserve the rest of my time for rebuttal. Okay. Thank you. That's fine. Ms. Greenwald. Good morning, Your Honors. Helene Greenwald on behalf of the United States. As to the waiver issue, we've argued that in our brief, but I just, in response to counsel's comments, in United States v. Brody, this court made clear that Jaime, if I'm saying it right, did not create a blanket rule that said that whenever a case comes before this court where the defendant agreed to the enhancement, both in his plea agreement and at the guilty plea and at sentencing, that that can never be waiver. It said the counsel in that case, they could discern, this court could, in Jaime, this court could discern absolutely no strategic reason why a court might waive it. Well, that's the problem here, too, really. I mean, why in the world would you give up the possibility of not having those extra eight levels when you even have the Ninth Circuit's decision about the Illinois statute? Well, most importantly, you had the Seventh Circuit's opinion about the Illinois statute. Because in Ramirez, a case that went to the very fast-track argument that he was trying to make in his appeal, this court held that that very Illinois statute covered sexual penetration, sexual conduct with a minor, with a teenager. Cited the earlier case, Marine Carrillo, where this court had expressly held that a minor within the meaning of sexual abuse of a minor includes someone 18. Right. No, I mean, so there's Seventh Circuit. Then it's two years later, though, is the Ninth Circuit's opinion. Yes, but also, at the same time the Ninth Circuit had ruled that, also pending before the defense attorney at the time was the Fifth Circuit's Umbach opinion, saying clearly that minor, for the purposes of that provision, included someone under 18. So it wasn't a blank, out-and-out winner to raise this argument. No, no, but that's not the standard for whether there's a strategic reason to raise it. People raise reasons if there's a 10% chance of winning. Of course, Your Honor, but there was a strong argument against him, both on test and the other. No, it was not so bad. I'll buy that. And moreover, he was trying to make a fast-track argument as well, which he didn't prevail on, but the thinking of counsel very strategically could have been, raising a number of issues, especially one I'm not likely to win, is going to make that whole argument harder as well. And also, it raised the very unsympathetic, I think, focusing on this argument of 16 and under being a minor, as opposed to 18 and under, just highlighted the fact that we're talking about a 15-year-old girl and a 30-year-old man. No, I understand that, although he talks about the facts. It's not like he's trying to hide the facts of the crime. He talks about them at the hearing. No, he does. So that's the problem I have with, oh, he's trying to paper it over. He wasn't. I understand. The only point the government's making here, and I won't press it any further, but it's simply that there were strategic reasons that would not have been unreasonable here. It wasn't a case like Jaime where there was no strategic reason. There were strategic reasons that would have been within reasonable competency of counsel to decide not to go for that issue, especially when there was a Seventh Circuit opinion right on point. But moving on from there, assuming plain error is a standard of review here, the fact is that there can be no plain, clear, obvious error where the law was at the time of sentencing and is today that a minor, for purposes of sexual abuse of a minor, is someone under 18. That's the law in this circuit as we stand here now. If you want to look to other circuits like the Ninth, that's true, but there's a split in the circuits because the Fifth Circuit agrees with the position of this court. And the suggestion, just getting to the merits of the idea, first of all, if to the extent counsel's suggesting some kind of new plain error standard in the case of people who don't speak, you know, English isn't their first language, I just want the record to be clear, the defendant had an interpreter. He had an interpreter. He was asked several times by the court if he understood. He had an opportunity to meet additionally with his counsel. All of that is repeatedly on the record. There was no suggestion that he wasn't competent, that he didn't understand the proceedings that were going on. So I think, you know, this case is not warrant any heightened, there's no suggestion on the record that this was a case where the interpreter wasn't doing his job or her job or that the counsel didn't understand. I'm sure your office must deal with quite a few cases that involve interpreters. Absolutely. Frequently. And Spanish in particular. So that really, I just cannot see, and I'm not aware of any cases that suggest that you change the plain error standard or create some kind of heightened standard in this circumstance. And on the merits of it too, you know, there's this premise in the defense counsel's argument that, as the court's aware, the statutory provision for sexual abuse of a minor originally in the guidelines section appeared with reference to the Immigration Act, aggravated felony, as counsel pointed out. There was a series, and that has had an interpretation of sexual abuse of a minor over the years. A series of cases interpreting that, affirmed by this court, cited in our brief, they make clear that under 18, a minor for purposes of that, was someone under 18. Prior to this case, the sentencing guideline was amended so that rather than referencing this Immigration Act, they incorporated it within the Act. And as we lay out in the brief, and I won't bore you with the legislative history here, the reason in doing that had nothing to do with changing the meaning of those words, sexual abuse of a minor. There's no indication that the sentencing commission was unhappy with the way that provision had been interpreted or anything. They adopted the exact same language. And where they were unhappy with the court's interpretation in the immigration context with language in that, if you're following me, in that Immigration Act, they actually changed it in other provisions, like forcible sex act, and they changed it to make it explicit. But sexual abuse of a minor was kept identical. So there's no reason to think, and the 11th Circuit has taken this very position, there is no reason to think that when the sentencing guideline adopted that expressed language, included it within the commentary to 201.2, and said that we want 16 points added for sexual abuse of a minor, that they intended that courts disregard what that term has meant for forever. Especially when that term, as the 5th Circuit pointed out in Rodriguez, is completely consistent. Understanding minor to be under the age of 18 is completely consistent with all the other guideline provisions that deal with minors within the guidelines. And I'll just direct Your Honor's attention to Rodriguez at footnotes 23 and 24, because in detail they go through these other provisions. So we're looking right here at the intent of the sentencing commission. So this legislative history about these meaning of the words and how the sentencing commission has used it is very important here, as well as the other considerations that we make in our brief. So even if Your Honors were to reach the merits, there is no reason to question the position that you took originally in, I'm skipping that name, in Maureen Carrillo, I believe is the name of the case. Yes, and then also in Ramirez more recently. Unless Your Honors have any more questions, we will rest on our brief and ask that you affirm the conviction of sentence. All right, thank you very much. Mr. Henderson. Thank you, Your Honor. I think that the government's discussion of the sentencing commission amending this guideline just begs the question as to who decides what this term means. And it's a term of art, sexual abuse of a minor. It's not words. You can't say, well, what's sexual mean, what does abuse mean, what does minor mean, and put it together. It's a term. You couldn't say manslaughter, well, let's separate out the word and make it man's laughter. That's ridiculous. It's the same thing with this term of art. You can't separate out the component parts and make it into something different. Martina's career was correctly decided because the person or the agency who gets to decide that, as this court just said in Velasco, is the Board of Immigration Appeals. Chevron deference applies to that. They determine what an aggravated felony is, and unless they're totally wrong, the court's going to defer to that. But the sentencing commission, in promulgating this term, along with other terms that don't appear in the Immigration and Naturalization Act, does not cite to the INA. It does not say use this term as the BIA would apply it. But it is an immigration offense, and so there's something to be said for a uniform national rule, and the definition of minor below 18 offers that. The states, as you've pointed out, are all over the block when it comes to that. Right, but again, that's minor, and sexual abuse of a minor is an offense that doesn't necessarily refer to a different definition of minor. And that's what I think Judge Posner pointed out in his dissent in Velasco, and I think quite persuasively to say we can't just pull whatever definition suits our needs. We have to consult what the Supreme Court has told us to consult, and that is what is the generic offense of sexual abuse of a minor. Federal law calls it under 16. Thirty-four states call it under 16. The Model Penal Code calls it under 16. Black's Law Dictionary seems to suggest it's under 16. All of these sources for the generic definition of the offense say it's under 16, and because the Sentencing Commission said we're not deferring to BIA at this point, this Court needs to make that determination. So thank you very much. All right, thank you very much. We will take the case under advisement.